IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ELLWOOD KLUMP | * | |
| | * | |
| | * | |
| v. | * | Civil No. JFM 09-CV-1157 |
| | * | |
| MAYOR AND CITY COUNCIL OF | * | |
| BALTIMORE | * | |
| | ****** | |

**MEMORANDUM**

Plaintiff Ellwood Klump ("Plaintiff") brings this employment discrimination action against his employer, the Mayor and City Council of Baltimore ("the City"), alleging racial discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, and denial of equal protection under 42 U.S.C. § 1981. Now pending before this Court is Defendant's motion for summary judgment. For the following reasons, the motion for summary judgment is granted.

I. FACTS

Plaintiff is a Caucasian man who worked at the Back River Wastewater Treatment Plant ("the Plant"), under the Baltimore City Department of Public Works, for all times relevant to this dispute. In February 2005, Plaintiff applied for a position as an Instrumentation Tech Supervisor II, which would have been a promotion. Plaintiff was given an oral examination for this position by an interview panel in October 2005. Other applicants were also interviewed. In December 2005, Plaintiff was informed by the City's personnel department and others that he had received the highest score on the examination, and he was offered the position. On December 2, 2005, Plaintiff received a letter from the City's personnel department requiring him to go for a physical as the second step of the promotion process. He passed the physical and was advised that his pay would be increased in about five weeks.

1

After Plaintiff accepted the promotion, an African-American employee filed a complaint with the City's Office of Compliance, alleging that Plaintiff was selected for the promotion because he was white, that he had written the exam, that he was given answers to the exam, that he had been given special training, and other similar complaints. An African-American Personnel Administrator in the Equal Employment Opportunity Compliance Office, Arthur Barnes, conducted an investigation of the promotion process. During the investigation, Barnes interviewed the complainants and other witnesses, many of whom indicated that they felt the interview process was unfair. He also discovered that some aspects of the interview process did not comply with established departmental policy and confirmed that Plaintiff had provided books containing interview questions and answers to a member of the interview panel. After completing the investigation, the agent sent a letter to Department of Public Works Deputy Director Shirley Williams, recommending that Plaintiff's promotion be stopped. The agent also suggested several changes to the Tech Supervisor II position that would render Plaintiff unqualified for the position. Plaintiff was informed that a freeze had been placed on his position on January 25, 2006.

Believing that the freeze was the result of racial discrimination, Plaintiff decided to file a claim with the Equal Employment Opportunity Commission ("EEOC"). He informed the EEOC that he wished to file a complaint and was sent a Charge Information Questionnaire, a Remedy Information Form, a Witness Questionnaire, and a Selection Questionnaire. These documents arrived with a charge number on them. Plaintiff completed the forms, signed and dated them September 7, 2006, and sent them to the EEOC, where they were received on September 8. On October 31, 2006, an EEOC investigator sent Plaintiff a letter instructing him to sign and date the enclosed "Charge of Discrimination," EEOC Form 5, which was prepared using the information

he had provided. Plaintiff believed the form contained errors, so he contacted the EEOC to change it. The form was then corrected and sent to Plaintiff for his signature. Plaintiff signed the form on December 9, 2006 and filed it the same day.

The City argues that Plaintiff is barred from bringing this suit because his filing was untimely or that, in the alternative, Plaintiff has failed to state a case sufficient to withstand summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* the Supreme Court of the United States explained that in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in the light most favorable to the nonmoving party. *Id.* at 255.

## III. ANALYSIS

A. <u>Timeliness of Filing</u>

In order to maintain an action under Title VII, a plaintiff must file an administrative charge of discrimination within the time period allotted. *Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007) (citing 42 U.S.C. § 2000e-5(e)(1)

and *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004)). Because Maryland is a "deferral state," the time period allowed is 300 days. *Id.* (citation omitted).

When a formal charge has not been timely filed, another written document sometimes may serve in its place. Under 29 C.F.R. § 1601.12, "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." According to recent Supreme Court precedent, however, a document meeting the regulation's requirements "is not a charge in every instance." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 397 (2008) (finding that an intake questionnaire may constitute a charge in an Age Discrimination in Employment Act case). In addition to satisfying the regulation, "if a filing is to be deemed a charge it must be *reasonably construed as a request for the agency to take remedial action* to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402 (emphasis added). For example, the intake questionnaire before the Supreme Court was a charge because it was supplemented by an affidavit stating "[p]lease force Federal Express to end their age discrimination plan so we can finish our careers absent the unfairness and hostile work environment created within their application of *Best Practice/High-Velocity Culture Change*." *Id.* at 405-06.

Following *Holowecki*, several courts in the District of Maryland have found intake questionnaires insufficient to state a charge under Title VII because the questionnaires lacked clear requests for agency action. *See, e.g.*, *Equal Employment Opportunity Comm'n v. Freeman*, No. RWT 09cv2573, 2010 WL 1728847, *7 (D. Md. April 27, 2010); *King v. Lowe's Home Ctrs., Inc.*, No. AW-08-3393, 2009 WL 3681686, *4 (D. Md. Nov. 2, 2009); *Grice v. Baltimore County*, No. JFM 07-1701, 2008 WL 4849322, *4 (D. Md. Nov. 5, 2008). *But cf. Mosby-Grant*

4

*v. Frederick County*, No. WMN-09-CV-01232, 2009 WL 3490059, *2 (D. Md. Oct. 22, 2009) (finding a charge under *Holowecki* where plaintiff submitted a letter titled in part, "Grant Charge for Retaliation" and wrote, "[Plaintiff] hereby files her charge with the EEOC"). [1]

Here, Plaintiff's intake questionnaire was sufficient to constitute a timely filing. It is undisputed that Plaintiff had 300 days beginning January 26, 2006 in which to file his charge with the EEOC, meaning it was due on November 22, 2006. Plaintiff's formal charge was not filed until December 9, 2006, which is seventeen days after this deadline. Plaintiff's intake questionnaire, however, was filed on September 8, which falls within the permissible period. This filing meets the requirements outlined in *Holowecki*. As a preliminary matter, the Court takes note of the fact that Plaintiff's questionnaire is titled, "*Charge* Information Questionnaire." (Plaintiff's Exh. 41 at 1(emphasis added).) This label is in clear and significant contrast to forms submitted by plaintiffs in similar cases. For instance, in *Holowecki* the Supreme Court emphasized that "[u]nlike the EEOC Form 5, the Intake Questionnaire is not labeled a 'Charge of Discrimination.' In fact the wording of the questionnaire suggests the opposite: that the form's purpose is to facilitate 'pre-charge filing counseling' and to enable the agency to determine whether it has jurisdiction over 'potential charges.'" 552 U.S. at 405 (internal citations omitted). Here, the form clearly indicated intent to file a charge. Additionally, Plaintiff answered a question asking, "What relief or remedy are you seeking in response to *filing a charge with the EEOC*?" Plaintiff answered that he was seeking lost salary, legal fees, and the promotion.

---

[1] Although the Fourth Circuit has not addressed the specific issue of whether an intake questionnaire may constitute a charge in a Title VII case, it has accepted a letter or affidavit as a filed charge. *Valderrama*, 473 F. Supp at 662 (citing *Waiters v. Robert Bosch Corp.*, 683 F.2d 89, 91 (4th Cir. 1982); *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002)). Courts in the District of Maryland showed a willingness to accept intake questionnaires as charges prior to the decision in *Holowecki*. *See, e.g.*, *Valderrama*, 473 F. Supp. 2d at 663 (declining to accept an intake questionnaire as a charge because it lacked "any clarity or precision" in describing the claim and because complainant "allowed her claim to languish for more than two years"); *White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576, 580-81 (D. Md. 2007) (finding that an intake questionnaire filed with the EEOC met the minimum requirements for a "charge" under the statute).

(Plaintiff's Exh. 41 at 3.) This portion of the form is reasonably construed as a request for the EEOC to take remedial action. Consequently, Plaintiff's case is not time-barred.

B. Race Discrimination

"A plaintiff generally may defeat summary judgment and establish a claim for race discrimination [under § 1981 and Title VII] through two avenues of proof." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (2007). One avenue is for the plaintiff to demonstrate "through direct and circumstantial evidence that his race was a motivating factor in the employer's adverse employment action." *Id.* (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc)). Alternatively, the plaintiff may establish a prima facie case of discrimination "demonstrat[ing] that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* (quoting *Hill*, 354 F.3d at 285). Here, the second approach is used.

The *McDonnell Douglas* pretext framework sets forth four elements to establish a prima facie case of race discrimination. *Holland*, 487 F. 3d at 214 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). In order to establish a prima facie case of racial discrimination in promotions, a plaintiff must show that (1) he is a member of a protected class; (2) he applied for the position in question; (3) he was qualified for the position; and (4) "the defendants rejected [his] application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (citations omitted). If the plaintiff presents a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Holland*, 487 F. 3d at 214 (quoting *Hill*, 354 F.3d at 285). The employer's burden is one of production, not persuasion. If met, the burden then shifts back to the employee to prove

6

by a preponderance of the evidence that the employer's reasons were a pretext. *Id.* (citing *Hill*, 354 F.3d at 285).

Here, the parties agree that the first two elements of the prima facie case are met, and the City concedes that the third element is arguably satisfied. The fourth element, circumstances giving an inference of unlawful discrimination, is not met, though. The relevant actor for purposes of determining discriminatory intent is the decision maker. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998) (abrogated on other grounds). The court should look to what "management honestly believed," *id.*, and should "be cautious about attributing to any ultimate decision maker . . . the most unfortunate expressions and beliefs of those around him . . . ." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010); *see also Hill*, 345 F.3d at 291 ("[W]e decline to endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decisionmaker simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision.").

In the instant case, Williams was the sole decision maker. Plaintiff does not seem to question this, instead focusing his argument on the allegedly improper investigatory method used by Barnes. The extent to which Barnes may have conducted a biased investigation is irrelevant here, however, because Barnes had no final or formal control over Plaintiff's promotion. Barnes's bias, if any, is not imputable to Williams. Indeed, Plaintiff explicitly argues that Williams voided his promotion only because she believed a member of the interview panel improperly accepted potential interview questions from Plaintiff. Furthermore, even if Plaintiff was able to establish a prima facie case, it would be impossible for him to overcome the

significant evidence that his employer nullified his promotion because of legitimate concerns about irregularities in the interview process.

## IV. CONCLUSION

For the foregoing reasons, the City's motion for summary judgment is granted.

Date: June 8, 2010  /s/
J. Frederick Motz
United States District Judge

8